**UNITED STATES of America, Plaintiff–Appellee.**

v.

**Carl S. BEGAY, Defendant–Appellant.**

**No. 90–2003.**

United States Court of Appeals, Tenth Circuit.

June 26, 1991.

---

**517**

Thomas L. English, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Joe M. Romero, Jr., Asst. U.S. Atty., Albuquerque, N.M., were on the brief), for plaintiff-appellee.

George A. Harrison, Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, Chief Judge, EBEL, Circuit Judge, and NOTTINGHAM,* District Judge.

HOLLOWAY, Chief Judge.

Defendant Begay, an Indian, appeals his conviction and sentence on one count of aggravated sexual abuse of an Indian child in Indian country in violation of 18 U.S.C. §§ 1153 (offenses committed within Indian Country),¹ 2241(c) (sexual acts with persons under twelve years of age),² and 2245(2) (sexual act).³ Begay was sentenced to imprisonment for 108 months and a supervised release term of five years.

Begay contends that the district court erroneously restricted his right to cross-examination in violation of the Confrontation Clause of the Sixth Amendment by excluding evidence of relevant incidents of the alleged victim's prior sexual activity under Federal Rules of Evidence 412(b)(2)(A)⁴

* Honorable Edward W. Nottingham, United States District Judge for the District of Colorado, sitting by designation.

1. Section 1153 of title 18 provides in part:

§ 1153. Offenses committed within Indian country

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, *a felony under chapter 109A*, incest assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. (Emphasis added).

Chapter 109A comprises "Sexual Abuse" statutes, 18 U.S.C. §§ 2241–2245.

2. Section 2241(c), a part of the Aggravated sexual abuse statute, provides:

(c) With children.—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

3. Section 2245 defines the term "sexual act." The statute provides in part:

§ 2245. Definitions for chapter
As used in this chapter—
(2) the term 'sexual act' means—
(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; and
(3) the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; ....

4. Federal Rule of Evidence 412 is commonly referred to as a "rape shield law." It creates a "privacy shield" for a complaining witness by restricting the examination of a person's sexual past. *See* F. Tuerkheimer, *A Reassessment and Redefinition of Rape Shield Laws*, 50 Ohio St. L.J. 1245, 1247 (1989). The relevant portions of

and 403.[5] He also argues that the court erred in computing his sentence under the United States Sentencing Guidelines (Guidelines). We reverse and remand for a new trial and do not reach the claims of error relating to the sentence.

## I

There was evidence tending to show the following:

At the time of the alleged assault in early December 1987, Begay lived in a three-room residence on an Indian reservation in New Mexico with his sister, Betty, his girlfriend, Anna R., and her eight year old daughter, D.R. (D.).[6] Begay, Anna and D. regularly slept together in the same bed, with Anna between Begay and D. On or about the evening of December 1, 1987, Begay was intoxicated and went to bed. Only D. was in Begay's bed as Anna had decided to sleep in a different bed in the same room because of her period.

After noticing some movement, Anna became concerned that Begay might be molesting her daughter. II R. at 73. Anna turned on the light, "threw the covers off of them," and saw Begay in his shorts and D.'s pants zipped down, with Begay "hugging [D.]." *Id.* at 73–74. Begay got dressed, "said he was going to kill himself and just took off" from the house. *Id.* at 76. Anna's and D.'s accounts of the incident are similar, although D. specifically testified at trial that Begay undressed her, laid on her, and put his penis in her, and went up and down. *Id.* at 64–65, 154.

On December 28, 1987, D.'s relatives reported the incident to Irene Poyer, a social worker with the Navajo Tribe. *Id.* at 125. Shortly thereafter during an interview at the Begay residence, D. informed Poyer that Begay had sexual intercourse with her. *Id.* at 132–33.

Following this early December 1987 incident, D. was examined for the first time on March 30, 1988, by Doctor Robert Wagner. The examination revealed an ."unusually"

Rule 412, as it existed at the time of the December 1987 offense charged here, provided:

(a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or assault is not admissible.

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(c) . . . .

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined. Rule 412 was amended on November 18, 1988, after the charged offense. The amendments do not "appear to have any substantive effect, but rather [conform] terminology" to the pertinent sexual offense provisions under Chapter 109A (Sexual Abuse) of title 18 of the United States Code. 2 WEINSTEIN'S EVIDENCE, 412–10 (12th ed. 1990).

**5.** Federal Rule of Evidence 403, *Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time*, provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**6.** This Court relies on the official judgment of the district court that reported the victim's age as eight. Nevertheless, there are references in both the government's brief and the record that indicate that the victim was nine at the time of the assault. Brief for Appellee at 4; II R. at 85 (Dr. Wagner's testimony regarding his examination of the victim). In any event, both ages are covered under the aggravated sexual abuse statute, 18 U.S.C. § 2241(c), since D. had not attained the age of 12 years.

large hymenal opening and a "streaky area that ... [Dr. Wagner] considered to be an abrasion of some sort." *Id.* at 83. During cross-examination by Begay's counsel, Dr. Wagner further testified that it was impossible to determine strictly on the basis of D.'s physical examination whether her symptoms reflected one violent sexual penetration or repeated penetrations over a period of time. *Id.* at 84. Moreover, after cross-examination, during an offer of proof by Begay (which was excluded), out of the hearing of the jury Dr. Wagner also testified that it was impossible to determine from the physical examination alone whether D.'s symptoms were caused by Begay or during earlier incidents with John Jim. In connection with this offer of proof D.'s brother, Aaron R., would have testified that he saw Jim assault D. on three separate occasions in the summer immediately preceding the Begay incident. *Id.* at 244–47. This offer was also excluded. Jim has pled guilty to aggravated sexual assault upon D. *Id.* at 175–78.

On April 18, 1988, Begay and Esther Keeswood, a juvenile presenting officer with the Navajo Tribe, both appeared before the Navajo children's court in a dependency case to review a petition to place D. in a different living environment. *Id.* at 140. Keeswood testified that when she questioned Begay during the hearing, Begay admitted having sexual intercourse with D. *Id.* at 140–41.

On May 24, 1988, criminal investigator Semans of the Bureau of Indian Affairs questioned Begay at the Shiprock Police Station about D.'s allegations that he had sexually abused her. III R. at 19, 21. Although Begay was not in custody when he arrived at the station with Anna R., nevertheless Semans informed Begay in English of his Miranda rights. II R. at 99. Furthermore, Officer Cowboy was present at the meeting and he likewise advised Begay in Navajo of "his rights." Begay indicated that he understood his rights and was more comfortable communicating in English. *Id.* at 100.

When confronted by the officers with allegations and medical findings of sexual abuse, Begay responded, "if D. said it was true, then that's what happened." *Id.* Later, he reiterated this response to the officers but said that he was too drunk on the evening of the incident to recall exactly what happened. After a brief period, Begay admitted in greater detail that he initially thought that D. was Anna until he touched her. Begay nevertheless, "inserted his penis inside of her vagina." *Id.* at 101. Begay subsequently signed a written statement reflecting his third admission after Semans reviewed it orally with him. *Id.* at 101–02.

On February 7, 1989, a federal grand jury returned a one-count indictment against Begay, charging him with "engag[ing] in a sexual act with ... an Indian female who had not yet attained the age of twelve (12) years." I R. at 1. Begay filed a motion to suppress the May 24, 1988 confession that he made to Officers Semans and Cowboy at the Shiprock Police Station. Begay claimed that his confession was involuntary because "he was scared" and because "he didn't know that [Jim] was being investigated for a prior act of penetration." Brief for Appellant at 5. The district court denied Begay's motion at a suppression hearing before trial.

Jerry Harris, an investigator for the Public Defender's Office, interviewed D. on March 24, 1989. He asked her if Begay "had put himself inside her or something to that effect, and she replied to me no." II R. 164. This was related in testimony before the jury at trial. In an offer of proof, rejected by the trial judge, Harris said he questioned D. about the Jim incident and contrasted it with the Begay incident. Harris said basically his question to D. was "did Carl Begay do the same thing to her that John Jim did, as far as—you know, getting inside her and that type thing, and she replied to me no." *Id.* at 183. This offer was rejected at trial. *Id.* at 184.

Before trial Begay filed a motion to offer evidence, pursuant to Rule 412, seeking to introduce proof which involved references to D.'s past sexual activity with Jim. The court denied the motion after a hearing. After a two-day trial, the jury found Begay

guilty as charged by the indictment, the judgment of conviction and the sentence were entered, and this appeal followed.

## II

■ Begay's primary claim of error is that the district court violated the Confrontation Clause of the Sixth Amendment by improperly excluding evidence under Rules 403 and 412, Fed.R.Evid. He says that admission of the evidence was "constitutionally required" and should have been allowed under Rule 412(b)(1). Begay argues that the trial judge's rulings erroneously denied him the opportunity to explain the physical evidence of D.'s condition, relied on heavily by the prosecution, by showing earlier sexual acts that could have caused the conditions; and that he was wrongly denied the right to cross-examine D. in a manner necessary to show the weakness of her testimony against Begay as to whether he was actually guilty of the sexual act with penetration as charged, all in violation of the Confrontation Clause. Reply Brief at 2.

Begay also argues that the evidence concerning the prior sexual conduct with Jim should have been admitted under the exception provided by Rule 412(b)(2)(A). Appellant's Brief at 24–25. The exception protects the defendant's right, *inter alia*, to show that past contacts with persons other than the accused were the source of semen *"or injury."* (Emphasis added). Since the prosecution relied heavily on Dr. Wagner's testimony about D.'s enlarged hymenal opening and also evidence of an area considered to be an abrasion (II R. at 83–84, trial testimony; II R. at 266, 270, 292, 293, prosecution's argument), the right to defend by cross-examination showing that the conditions could have resulted from earlier conduct with another person was crucial and protected by the Rule.

The Sixth Amendment's Confrontation Clause states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Clause provides two types of protections for defendants, the right physically to face those who testify against him

and the right of cross-examination—"a primary interest of the [Clause]." *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (citing *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)). *See Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 482, 102 L.Ed.2d 513 (1988); *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). *See also Coy v. Iowa,* 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988) (defendant's right to confrontation violated where screen prevented complaining witnesses from viewing him, allegedly justified by legislatively imposed presumption of trauma).

The Supreme Court has long held that the rights to confront and cross-examine witnesses and to call witnesses in one's behalf are essential to due process. *See Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Indeed, the Court has emphasized that cross-examination "is critical for ensuring the integrity of the factfinding process" and "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Stincer,* 482 U.S. at 736, 107 S.Ct. at 2662; *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Accordingly, we recently held that a "defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination." *United States v. Lonedog,* 929 F.2d 568, 570 (10th Cir.1991) (citing *United States v. Atwell,* 766 F.2d 416 (10th Cir.), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985)).

The trial judge said the case presented a "close question" on permitting the cross-examination that Begay sought. Nevertheless the court ruled at the pretrial hearing held pursuant to Rule 412 that evidence of the Jim incidents was inadmissible under Rule 403 because it "would be totally unfair to ... [D. to] subject [her] to the examination of any other rape ... and [it would] prejudice the jury against the young child." II R. at 11. Furthermore, he said it would create "confusion of the

critical issue of the case because the defense would be attempting to retry or try a case of rape on the part of another defendant who pled guilty to the offense." *Id.* at 12.[7] This reasoning is pertinent both under Rule 403 and under the similar probativeness versus prejudice test provided in Rule 412(c)(3).

Relevant evidence is any evidence having a tendency to make the existence of a material fact more or less probable than it would be without the evidence. *See United States v. Shomo,* 786 F.2d 981, 985 (10th Cir.1986); Fed.R.Evid. 401. Materiality is defined by substantive law. Here the aggravated sexual abuse statute, 18 U.S.C. § 2241, requires proof, for a charge of abuse of a child under 12, of a "sexual act." 18 U.S.C. § 2241(c). And a "sexual act" includes contact between the penis and vulva occurring "upon penetration, however slight." *Id.* at § 2245(2)(A).

Here the significance of the excluded evidence is magnified when the lesser offense of abusive sexual contact is considered. The trial judge instructed that the indictment "necessarily include[d] the lesser offense of abusive sexual contact of a child," found at 18 U.S.C. § 2244. I R., Doc. 59, Instr. No. 9d; Doc. 60. *See* note 3,

*supra.* Consequently, any evidence proving or disproving a "sexual act," as charged in the indictment for aggravated sexual abuse with penetration, or the lesser offense of "sexual contact," as explained in the trial judge's lesser-included-offense instruction, is relevant and admissible unless specifically excluded by another rule of evidence. *United States v. Esch,* 832 F.2d 531, 535 (10th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988); *Shomo,* 786 F.2d at 985. *See, United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir.1983), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984).

■ Contrary to the trial court's ruling, we conclude that cross-examination about the Jim incidents was relevant and probative on the central issue whether D.'s memory was clear and accurate on critical details about the Begay incident as contrasted with the Jim incidents.[8] Further, cross-examination of Dr. Wagner was likewise relevant and of critical importance. The rejected offers of proof included his statement that his physical findings about D.'s condition would be consistent with proof that Jim had full sexual intercourse with D. on at least two occasions several months before the Begay incident,[9] al-

---

**7.** Begay also proffered evidence of the Jim incidents by testimony of Aaron R., Dr. Foote, a child psychiatrist, and Jerry Harris, an investigator with the public defender's office. II R. at, 243–246, 248, 182–85. For example, although Harris testified before the jury that D. denied having sexual intercourse with Begay, in Begay's later offer of proof, which was rejected, he would have shown that Harris would testify: "[b]asically I asked her—I don't remember the exact wording on this, I'd have to go back to my notes, but basically the question consisted of did Carl Begay do the same thing to her that John Jim did, as far as—you know, getting inside her and that type of thing, and she replied no." *Id.* at 183.

Like the defendant's proffer of evidence concerning the cross-examination of D. and Dr. Wagner, the trial court excluded all the offers of Aaron R.'s, Dr. Foote's and Harris' testimony of the Jim episodes under Federal Rule of Evidence 412. *Id.* at 248–49.

**8.** The importance of the cross-examination becomes more apparent when Begay's arguments to the jury are considered. To counter his confession, offered through officer Semans' testi-

mony, and D.'s testimony, defense counsel argued that Begay had been abusing alcohol for many years; he had been on a four or five day binge before this incident; he did not have a real memory of what occurred; that he was told what happened and he reconstructed a memory, and said that whatever D. said was probably true, he was drunk; and counsel noted that Semans wrote out the confession. II R. 284–85.

Defense counsel also pointed to the contradictions in D.'s versions of the events, and her denying knowing what happened. *Id.* at 277. On the basis of these and other arguments, Begay's counsel contended that the government's burden of proof beyond a reasonable doubt was not met. *Id.* at 286. The excluded offers of proof would have served as significant support for the defense theory, and would have served to undermine the prosecution's case which relied heavily on D.'s physical condition.

**9.** The prosecutor admitted at the pretrial hearing that Jim had pled guilty to the rape of D. II R. 3–4. Begay's attorney offered to prove that Jim had sexual relations with her on at least two occasions, but this was rejected by the trial judge. *Id.* at 3–4; II R. at 247–48.

though the doctor could not differentiate as to time lengths when the conditions were caused. II R. 175–76.

■■■■ Having determined that the Jim incidents were relevant, we should also consider the trial court's additional ruling that even if the incidents were relevant, "any relevancy would be totally outweighed by [their] prejudicial effect...." II R. at 12, referring to the traumatic effect on D. Begay argues that the district court erred in finding that the probative value of cross-examination of D., Dr. Wagner, Officer Semans and Harris concerning the Jim incident was outweighed by its prejudicial effect.

In *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the state similarly sought to protect complaining witnesses, young victims of sexual abuse, by permitting them to testify behind a screen to avoid viewing the defendant. The state argued that the confrontation interest at stake, the defendant's right to face-to-face confrontation, was outweighed by the need to protect victims of sexual abuse. The Court stated that "face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult." *Coy*, 487 U.S. at 1020, 108 S.Ct. at 2802. The Court held that the screen violated the defendant's constitutional right to confrontation and noted that "[i]t is a truism that constitutional protections have costs". *Id.*

In *Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court faced another Confrontation Clause issue similar to that presented in *Coy*. The issue arose under a Maryland statute permitting the receipt of testimony from a child in sexual offense prosecutions by one-way closed circuit television if the trial judge first determines that testimony by the child victim in the courtroom would result in the child suffering serious emotional distress such that the child could not reasonably communicate. 110 S.Ct. at 3160–61. If a trial court makes such a case-specific finding of necessity, the Con-

frontation Clause does not prohibit the statutory procedure for receiving the child's testimony. *Id.* at 3171. Distinguishing *Coy*, the Court said that it had "never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial," *id.* at 3163 (emphasis in original), noting that *Coy* expressly left for another day the question whether any exceptions exist to the literal meaning of the Clause. *Id.* at 3163. However, the Court in *Craig* repeatedly emphasized the critical importance of cross-examination:

> The combined effect of these elements of confrontation—physical presence, oath, *cross-examination*, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings. ....

> ....

> .... Because there is no dispute that the child witnesses in this case testified under oath, *were subject to full cross-examination*, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.

*Id.* at 3163, 3170 (emphasis added). Thus, again the Supreme Court has emphasized the critical importance of cross-examination as an element of the protections of the Confrontation Clause.

In *Vigil v. Tansy*, 917 F.2d 1277 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 995, 112 L.Ed.2d 1078 (1991), we affirmed the rejection of a habeas claim presenting an issue similar to that in *Craig*. The use of video-taped testimony by a child at a state trial on charges of sexual penetration of a minor was held not to violate the Confrontation Clause. We pointed out, however, that the defendant was present at the video-taping and that his *"defense*

*counsel cross-examined the witness,"* the defendant could see and be seen by the child, and the use of the tape taken for an earlier trial was permitted after a hearing where a psychologist testified the child could not testify in open court and that producing a new tape would be almost as difficult for the child as testifying in open court. *Id.* at 1278–79 (emphasis added). *See also Harper v. Kelly,* 916 F.2d 54, 56 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 1403, 113 L.Ed.2d 459 (1991) (quoting the *Craig* observation that the "central concern of the Confrontation Clause" is to insure reliability of evidence against a criminal defendant by subjecting it to rigorous testing).

We are unable to agree with the rulings of the trial judge rejecting Begay's efforts to cross-examine and to proffer evidence on critical facts about the Jim incidents. As we have noted, the prosecution relied heavily on the testimony concerning the enlarged hymen and the abrasion, conditions the doctor testified about for the prosecution. In closing argument the prosecutor came back to this point to argue that "[t]he evidence that was presented by Dr. Wagner was consistent with someone who had been sexually penetrated. That speaks for itself." II R. at 270. The prosecuting attorney also argued to the jury that "[s]he was examined, ladies and gentlemen, by a physician, and the examination was consistent with that sexual assault." *Id.* at 266. And in his rebuttal, the prosecutor bore down on the medical evidence again: "Medical evidence. Does that medical evidence that you heard from Doctor Wagner, does that suggest that nothing happened, that this is all just a big bruja about nothing?" *id.* at 292, "you've got the medical evidence...." *Id.* at 293. Leaving the state of the evidence and such argument unanswered by proof of the Jim incidents was crippling to the defense of Begay.

In these circumstances, we are convinced that it was error to restrict the cross-examination of D. and to reject the offers of proof by cross-examination of Dr. Wagner and other witnesses respecting the Jim incidents in order to counter the damaging evidence of the child's physical condition, which the prosecution was obviously relying on to point to the defendant's guilt. We feel there was an abuse of discretion in holding that such evidence was more prejudicial than probative for purposes of Rule 403 and 412. Furthermore, we are convinced that under Rule 412(b)(1), the evidence should have been admitted as constitutionally required to protect Begay's rights under the Confrontation Clause. *See United States v. Nez,* 661 F.2d 1203, 1205 (10th Cir.1981). We are persuaded by the reasoning in *United States v. Saunders,* 736 F.Supp. 698, 703 (E.D.Va.1990):

> .... Although the Rule provides no guidance as to the meaning of the phrase 'constitutionally required,' it seems clear that the Constitution requires that a criminal defendant be given the opportunity to present evidence that is relevant, material and favorable to his defense. *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (to establish 6th Amendment violation, defendant must show that he was precluded from offering evidence 'material and favorable to his defense.') (footnote omitted); *Washington v. Texas,* 388 U.S. 14, 16, 87 S.Ct. 1920, 1921–22, 18 L.Ed.2d 1019 (1967) (6th Amendment violation occurs when defendant is arbitrarily deprived of 'testimony ... relevant and material, ... and vital to the defense.'); ....[10]

*See, e.g., State v. Calbero,* 71 Haw. 115, 785 P.2d 157, 161–62 (1989); *State v. Jacques,* 558 A.2d 706, 708 (Me.1989); *State v. Colbath,* 130 N.H. 316, 540 A.2d 1212, 1215 (1988) (Opinion of Souter, J.).

10. We are not persuaded by the argument made by the prosecution in reliance on *United States v. Shaw,* 824 F.2d 601 (8th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). *Shaw* held that the injury exception to Rule 412(b)(2)(A) prohibiting past sexual behavior evidence does not include an enlarged hymen. Here that argument by the prosecution is not persuasive when it was the enlargement of the hymen which was specifically relied on by the prosecution as evidence of this defendant's guilt. In such a circumstance the *prosecution* itself has made this particular injury— the conditions of the hymen and the abrasion— directly relevant on the question of Begay's guilt or innocence.

The Supreme Court's recent decision concerning a state rape-shield statute in *Michigan v. Lucas*, —— U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), does not support the denial here of cross-examination and rejection of offers of proof of several witnesses' testimony concerning the prior sexual abuse of D. In *Lucas*, the Court reversed the Michigan Court of Appeals' adoption of a per se rule that preclusion of evidence of prior sexual behavior is unconstitutional in all cases where the victim had a prior sexual relationship with the defendant. The decision therefore recognized the validity of preclusion of such evidence in some instances, despite the guarantees of the Sixth Amendment. However, the Court left it to the Michigan courts to address in the first instance whether the state rape-shield statute authorized preclusion of the evidence (a requirement of notice within ten days after arraignment to avoid a bar on evidence of a defendant's prior sexual conduct with the victim was imposed by the Michigan statute), and whether on the facts of Lucas' case, such preclusion violated his rights under the Sixth Amendment. Thus, the questions before us of a defendant's rights under the Confrontation Clause are not foreclosed by *Lucas*, and our conclusion that Begay's Sixth Amendment rights were infringed here is not altered by *Lucas*.

In sum, we hold that the trial judge's rulings under Rule 412 and Rule 403, rejecting critical proof and cross-examination, were in error.

### III

■ The prosecution argues that if we find error in the exclusion of evidence by the trial judge, such error was harmless, citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), *inter alia*. The contention is that overwhelming evidence here rendered the history of the earlier incidents of "negligible probative value," Brief of Appellee at 30; that apart from physical findings made by Dr. Wagner, there was the eyewitness testimony of D. and her mother and "three separate confessions" made by Begay.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court adopted a harmless-error standard for consideration of constitutional errors. They were held not to mandate reversal in all instances, but the test that must be followed is one of heightened scrutiny: "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828; *Yates v. Parker*, —— U.S. ——, ——, 111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432 (1991) (constitutionally erroneous jury instructions require harmless-error analysis under *Chapman*); *Arizona v. Fulminante*, 499 U.S. ——, ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991) (admission of coerced confession must be subjected to constitutional harmless-error analysis); *United States v. Mitcheltree*, 933 F.2d 859, 864 (10th Cir.1991); *United States v. Lonedog*, 929 F.2d at 572 (10th Cir.1991); *cf. Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986) (some constitutional errors can never be dismissed as harmless).

In a case of violation of the Confrontation Clause, the strict standard of *Chapman* must be followed to judge whether the constitutional infringement can be held harmless beyond a reasonable doubt. In doing so the Court instructed in *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, that we consider

the importance of the witness' testimony in the prosecution case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Weighing these factors, we are unable to declare a belief that the restrictions of cross-examination and the rejection of offers of proof here were harmless beyond a reasonable doubt. The testimony of D. bearing on penetration *vel non* by Begay was critically important in the prosecution's case. Contrasting Begay's acts to those of Jim, as investigator Harris' testimony would have done, was of crucial probative value. Refusal of cross-examination of D. to show the contrast, which Harris

would have testified she drew, shut off a line of vital defense evidence to Begay. Such testimony by D., if in line with what Harris said she related, would not have been cumulative but instead would have perhaps been Begay's best evidence disproving penetration. The proffered testimony of Dr. Foote, a clinical psychologist, which was rejected, would have been that "it would not be possible to get an accurate picture of what occurred in this case with Carl Begay without inquiring into the prior sexual conduct." II R. at 248.

As to the presence or absence of evidence corroborating or contradicting D.'s testimony, there was the testimony of Dr. Wagner about D.'s physical condition consisting of the enlarged hymenal opening and an area indicating abrasion. However, his testimony could not be subjected to critical cross-examination because the court let only the evidence of the enlarged hymenal opening and the abrasion in, but not the important rejected evidence from the doctor that it was impossible to determine from D.'s physical examination alone whether her symptoms were caused by Begay or an earlier assailant. And as to the *Van Arsdall* factor of the extent of cross-examination otherwise permitted, 475 U.S. at 684, 106 S.Ct. at 1438, the trial court's rulings consistently shut off the entire area of proof relating to the Jim incidents, as when Harris' proffer was rejected as was that of Dr. Wagner concerning the earlier incidents. II R. 183–84.

The prosecution stresses the strength of its case, pointing to statements made by Begay. First, Ms. Poyer, a social worker, testified that on March 29, 1988, she "told [Begay] exactly what the child had told me" and that Begay "told [Poyer] in Navajo, yes, that's true but maybe I was too drunk." II R. 134. Poyer acknowledged that Begay was "just agreeing with what [Poyer] said in saying he was too drunk." *Id.* at 135. On April 18, 1988, Begay admitted to Keeswood, a juvenile presenting officer with the Navajo Tribe, that he had sexual "intercourse" with D.

Then on May 24, 1988, Begay made a statement to Officer Semans after he confronted Begay with D.'s allegations. Begay replied that "if [D.] said it was true,

then that's what happened." II R. at 100. He added, "Well, if [D.] said it, it's the truth, but I was drunk." During the questioning Begay was informed by Semans that "[D.] was examined by a doctor, and the doctor's finding ... was consistent with penetration." *Id.* at 108. At no point during any of the three statements was Begay told about the earlier Jim incidents with D.

Dr. Ferraro, a professor of psychology and psychiatry at the University of New Mexico, testified that Begay was a "binge drinker" whose cognitive abilities would be "rendered inoperable by the high degree of blood alcohol levels" during a binge. Dr. Ferraro predicted that Begay would have no independent memory of what happened during the incident with D. This evidence was admitted at trial. Nevertheless it must be remembered in evaluating the effect of the *exclusions* of other evidence which the *Chapman* test requires. Together with the excluded evidence, the effect might have been to undermine the strength of Begay's statements.

The overall strength of the prosecution's case was substantial. However, when the effect of the shutting off of all inquiry into the prior Jim incidents is considered, we cannot declare a belief that the constitutional infringement by the restriction of cross-examination and by the refusal of offers of proof was harmless beyond a reasonable doubt. Particularly in light of the question of the greater offense of a "sexual act" with penetration, as opposed to the lesser offense of a "sexual contact" that the jury might have found, the high threshold for a finding of harmless constitutional error is not met. We are not able to "declare a belief that [the constitutional error] was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

### IV

Our conclusion requires that the conviction be reversed and that a new trial be ordered. In that connection we note that the trial court will retain discretion to keep the cross-examination of D. within bounds of reason. The cross-examination of D. may be controlled for fairness to her when

the rights of Begay have been protected: by allowing sufficient cross-examination of D to inquire about the contrast with the acts of Jim, as opposed to those of Begay; by admission of Harris' proffered testimony if D. denies the statement, related by Harris, that she said Begay did not do what Jim did; by the cross-examination of Dr. Wagner showing the possible effect of the earlier incidents with respect to his findings on D.'s physical condition; by proof of Jim's guilty plea to the count of rape of D.; and by proof of Aaron R.'s statement that he saw two incidents of Jim having sex with D. The length, scope and temper of the cross-examination of D. will be within the trial judge's discretion, keeping in mind both the protection of the child and the right of Begay to defend himself.

In light of the conclusions we have stated, we need not reach the claims of error in sentencing. The judgment is reversed and the cause is remanded for a new trial and further proceedings consistent with this opinion.

IT IS SO ORDERED.