F I L E D
United States Court of Appeals
Tenth Circuit

MAR 2 2004

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THOMAS J. CLARDY,

        Petitioner - Appellant,

v.

DAVID R. McKUNE, Warden; PHILL
KLINE, Attorney General of Kansas,

        Respondents - Appellees.

No. 03-3058

(D. Kansas)

(D.C. No. 99-CV-3228-SAC)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner-appellant Thomas J. Clardy appeals the district court's denial of a writ of habeas corpus under 28 U.S.C. § 2254. He attacks his convictions for rape, aggravated criminal sodomy, and aggravated indecent liberties against a child on two grounds. Clardy asserts (1) that the Kansas state court erred in denying him access to records to prove that the child's mother was about to lose custody and had a motive to fabricate the story of sexual abuse because she saw Mr. Clardy and his mother as potential rivals, and (2) that the Kansas state court erred in ruling that evidence that the child was undergoing counseling for previous sexual abuse, which might have accounted for her knowledge of a type of sexual activity, was barred by application of the state's rape shield law.

On appeal in federal court, we find that, because Clardy's first argument does not implicate federal law or the Constitution, it remains a question of Kansas state law that we cannot review under 28 U.S.C. § 2254. Clardy's second argument as presented in his brief on appeal would have a constitutional dimension, but a review of the record reveals that Clardy did not fully present his constitutional argument to the Kansas state courts on direct attack. We consider the procedural issues this raises, but ultimately err on the side of both caution and judicial efficiency to review the claim. We hold that Clardy's argument is without merit, and we affirm the district court's denial of a writ of habeas corpus.

## BACKGROUND

Clardy was convicted of sexually abusing A.S., a girl who was nine years old at the time. The girl's mother, Cynthia, had met Clardy two to three weeks before she became homeless in August of 1993. Clardy offered for Cynthia and her children to move in with himself and his mother, but soon after the family moved in with the Clardys, Cynthia was arrested for a parole violation. She asked the Clardys to continue to care for her children while she was incarcerated.

When Cynthia was released from prison in November 1993, she and the children moved into their own rental place. Two weeks later, A.S. became upset and revealed to her mother that Clardy had sexually abused her while she had lived with him. Cynthia called the police to report the abuse, and A.S. was examined at a medical center. Neither that medical center, nor a subsequent specialty center, found physical evidence of abuse.

A.S. testified, however, that during the time she lived with the Clardys, she slept in Thomas Clardy's bed. Her description of the abuse was precise and graphic. Clardy had "put his private in my private," specifying that privates were used "to pee." Clardy would tell her to get on top of him and "start moving up and down" with his private in hers, and that it hurt. He had put his private in her "butt" while she was "laying on her side" and he was behind her. Clardy had made her "put my mouth on his private part" and "made me rub it up and down."

Clardy's penis was round, hard and pointed up; white stuff came out of it and went on the sheets or in his underwear, and some got in her mouth. His scrotum was big and hung down. She was also instructed to moan when "he was about to have a king-sized one."

A.S.'s brother confirmed important pieces of his sister's testimony. Jimmy reported that his sister had slept most of the time in Clardy's room, and that Jimmy had once opened the door of Clardy's bedroom to find his "sister on top of Mr. Clardy." Jimmy related that Clardy had been on his back, and had whispered to his sister "off, off, real fast," and his sister had "sort of rolled off . . . ." Jimmy had walked out and "didn't think nothing" of what he had seen.

Clardy's defense was mainly alibi, but he complains that the Kansas trial court made two decisions to exclude evidence that might have been useful to him. First, Clardy's counsel had subpoenaed records from both the Kansas state agency in charge of child welfare (the Kansas Department of Social and Rehabilitation Services, or "SRS"), and records of A.S.'s counseling sessions at the Wyandotte Mental Health Center. Clardy argued that the records "could be relevant" and "could be useful to the defense" in exploring the issue of custody, but was not much more specific about what he was looking for. Both agencies moved to quash the subpoenas on the ground that the records were confidential under Kansas state law. *See* Kan. Stat. Ann. §§ 38-1507, 65-5602. After *in camera*

review, the trial court determined that the records "contain no evidence that is relevant in this matter" and were protected by the cited statutes. Clardy was able, though, to cross-examine A.S.'s mother Cynthia at length during the trial to explore his theory that she had fabricated the abuse charges to keep custody of her children when her main rivals might have been the Clardys.

Second, Clardy's defense counsel filed a motion pursuant to Kansas's rape shield law to introduce evidence at trial concerning previous sexual abuse of A.S. Clardy asserted that the evidence of previous abuse was necessary to explain how a child of nine could know so much about sex, and he alleged that to deny the admission of this evidence would violate his Sixth Amendment right to confrontation. The trial court reviewed the records *in camera*, though, and determined that the type of sexual abuse A.S. had previously been exposed to was very different from what she had described as her experiences with Clardy. A.S. had previously been abused by a neighbor named John Gamble, who, in a one-time act, had performed oral sex together on A.S. and two other girls. There is some allegation that A.S. was exposed to pornographic movies and magazines at

Gamble's house,[1] but there is no evidence that A.S. was ever alone with Gamble or that they had engaged in standard sexual intercourse.

Clardy was convicted by a jury on two counts of rape, four counts of aggravated criminal sodomy, and two counts of aggravated indecent liberties. On April 24, 1998, the Kansas Court of Appeals affirmed Clardy's conviction, and, on July 8, 1998, the Kansas Supreme Court summarily denied his petition for review. *State v. Clardy*, 960 P.2d 267 (Kan. Ct. App. 1998) (Table), *review denied* (Kan. July 8, 1998).

In his brief to the Kansas Court of Appeals, Clardy alluded to both of the issues he raises before us. His challenge to the application of the rape shield law, however, was largely on evidentiary grounds. Pet. Br. on Dir. App. at 31-38.[2] The state appellate court's decision in response specifically addressed the evidentiary ground. *State v. Clardy*, No. 76,690 at 14-17 (Kan. Ct. App. Apr. 24, 1998).

---

[1]The Kansas Court of Appeals, however, found this allegation not to be true. Apparently, "[t]here was no evidence that the pornography A.S. was exposed to correlated to the acts [A.S.] said Clardy committed." *State v. Clardy*, No. 76,690 at 17 (Kan. Ct. App. Apr. 24, 1998).

[2]Although Clardy clearly focused on state evidentiary grounds in his brief to the Kansas Court of Appeals, he did cite a case involving the Sixth Amendment right to confront witnesses, noting that it "recognized the strong constitutional right of the defendant to present a defense." Pet. Br. on Dir. App. at 33.

Clardy timely filed this petition for a writ of habeas corpus with the federal district court in Kansas. The district court denied his petition, but granted a certificate of appealability on the two issues before us.

## STANDARD OF REVIEW

After a district court has granted a certificate of appealability, we review its denial of a writ of habeas corpus *de novo*. *See, e.g.*, *Valdez v. Ward*, 219 F.3d 1222, 1229 (10th Cir. 2000) (applying the same standards as applied by the district court). Under the statute that codified the writ of habeas corpus, however, federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *accord Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir. 1997).

Furthermore, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not generally grant a petition for a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State" before filing in federal court. 28 U.S.C. § 2254(b)(1)(A). In order to have been fairly presented to the state courts, the form of a claim raised to the state appellate court must be the "substantial equivalent" of the form of the claim raised in the federal habeas petition. *Picard v. Connor*, 404 U.S. 270, 278 (1971).

If some claims in the petition have been exhausted and others have not, the petition is considered mixed. *See, e.g.*, *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982). Federal courts may dismiss mixed petitions to allow the petitioner to return to state court to pursue his state court remedies, *id.* at 510, or they may reach the merits to deny the unexhausted claim, *Brown v. Shanks*, 185 F.3d 1122, 1125 (10th Cir. 1999).

Yet if a petitioner's claim would now be procedurally barred in the state courts, there is little purpose in dismissing his petition to permit him to refile his claim there. His claim is instead "considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), and *Medlock v. Ward*, 200 F.3d 1314, 1322-23 (10th Cir. 2000)). We will not generally consider issues that have been thus defaulted in state court on an independent and adequate state procedural ground unless the petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). But federal courts have in the past reached the merits of petitioners' claims where these determinations are uncertain. *See, e.g.*, *Smallwood v. Gibson*, 191 F.3d 1257, 1269 (10th Cir. 1999); *cf. also* 28 U.S.C. § 2254(b)(2) (establishing that federal courts may reach the merits of claims even if they may not have been exhausted).

**DISCUSSION**

**1.    Clardy's Claim Regarding Admission of Records from State Agencies**

Clardy's first claim regarding the state court's decision not to admit state agency records in evidence is purely a matter of the interpretation of Kansas law. Indeed, at no point in his brief on appeal did Clardy attempt to argue that the state court's decision implicated federal law or had a constitutional dimension. We are thus barred from reviewing his objection under habeas corpus standards. *Estelle*, 502 U.S. at 67-68. We further note that Clardy was afforded a full opportunity to cross-examine Cynthia on his theory that she had fabricated the story of sexual abuse to retain custody, and that Clardy made no showing that his defense was prejudiced by the trial court's decision to exclude the records.

**2.    Clardy's Claim Regarding Application of the Rape Shield Law**

Clardy does argue before us that his second claim regarding the application of Kansas's rape shield law has a federal constitutional dimension, but he failed to clearly raise the argument in this form before the state courts on direct attack. The state courts did not directly or specifically address the argument as a Sixth Amendment argument. This claim thus presents procedural issues, and we consider these before we conclude that uncertainty about the application of Kansas's procedural bar would have us address the merits of his claim.

### a.    Issues of Procedural Posture

On direct appeal, Clardy framed his objection to the application of the rape shield laws to exclude reference to A.S.'s previous sexual experience largely as a question regarding standards of evidence. The argument in his brief opened, for example, with the assertion that "The standard of review regarding admission of prior sexual conduct of a complaining witness is the same as any question involving relevant evidence." Pet. Br. on Dir. App. at 31. Clardy agreed that the admission of "evidence rests within the sound discretion of the trial court," and therefore that the state court's decision not to admit evidence of A.S.'s previous sexual history should "not be set aside absent a showing of abuse of discretion." *Id.* In sum, although he alluded to a Sixth Amendment right, Clardy's position was essentially that "[t]he rape shield statute basically incorporates the existing rules of evidence which the judge must use to decide whether the proffered evidence is relevant." *Id.*

The Kansas Court of Appeals answered Clardy's limited evidentiary argument about application of the rape shield law in kind. It documented that Clardy had asserted that the evidence of A.S.'s previous sexual history was "relevant to explain how she was able to provide sexual details other than by her contact with him," but it found no abuse of the trial court's discretion in denying admission of the evidence. *Clardy*, No. 76,690 at 14. According to the state

-10-

appellate court, nothing tied the "pornography A.S. was exposed to . . . to the acts she said Clardy committed," and that the actual form of sexual abuse A.S. had been exposed to had been significantly different than what she had experienced with Clardy. *Clardy*, No. 76,690 at 17.

Clardy now argues on collateral attack in federal court that the state trial court's decision not to permit him to introduce evidence of A.S.'s previous sexual abuse under Kansas's rape shield law[3] violated his Sixth Amendment right to

---

[3]Kansas's rape shield law, Kan. Stat. Ann. § 21-3525(b), reads in pertinent part:

[I]n any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in the presence of the jury, except under the following conditions:  The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness.  The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the court.  The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated.  The motion, affidavits and any supporting or responding documents of the motion shall not be made available for examination without a written order of the court except that such motion, affidavits and supporting and responding documents or testimony when requested shall be made available to the defendant or the defendant's counsel and to the prosecutor.  The defendant, defendant's counsel and prosecutor shall be prohibited from disclosing any matters relating to the motion, affidavits and any supporting or responding documents of the motion.  The court shall conduct a hearing on the motion in camera.  At the
(continued...)

-11-

confrontation.[4]  But it is unclear whether this formulation of Clardy's claim is the "substantial equivalent" of the one he raised in state court.  *See Picard*, 404 U.S. at 278.  We could thus consider it not to have been exhausted, and therefore not appropriate for consideration on collateral attack in federal court.  28 U.S.C. § 2254(b)(1)(A).  Although the state has failed to note this issue in any of its filings, and indeed no party has addressed the problematic procedural posture of this case, we may raise this issue ourselves upon review of the record.  *See, e.g.*, *Trice v. Ward*, 196 F.3d 1151, 1171 (10th Cir. 1999); *Steele v. Young*, 11 F.3d 1518, 1523 n.10 (10th Cir. 1993).

We are not confronted with a mixed petition at this point, however, because Clardy would be procedurally barred from raising this claim now in the state courts.  *See, e.g.*, *Thomas,* 218 F.3d at 1221 (explaining that claims that could no longer be brought in state court will be "considered exhausted and procedurally defaulted for purposes of federal habeas relief").  Under the Kansas statute that

---

[3](...continued)
conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted.  The defendant may then offer evidence and question witnesses in accordance with the order of the court.

[4]Under the Sixth Amendment to the United States Constitution, "the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const., Amend. VI.

governs collateral attacks on convictions in state court, a petitioner's claim must be brought *inter alia* within a year of when his last appeal in the state courts became final.[5] The statute contains an exception only for when necessary "to prevent a manifest injustice." Kan. Stat. § 60-1507 (2004). Clardy's last petition for review in the state courts was summarily denied by the Kansas Supreme Court nearly six years ago in July of 1998.

Clardy does not argue that Kansas's procedural bar was not independent or adequate, nor does he suggest that he could establish "cause and prejudice or a

---

[5]Kan. Stat. § 60-1507 reads in pertinent part:

(a) Motion attacking sentence. A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time, pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence.

*   *   *

(f) Time limitations. (1) Any action under this section must be brought within one year of: (i) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (ii) the denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition. (2) The time limitation herein may be extended by the court only to prevent a manifest injustice.

Kan. Stat. § 60-1507 (2004).

fundamental miscarriage of justice" such that we should consider his claim if the state's bar applied. *English*, 146 F.3d at 1259. Clardy may then not have satisfied the threshold requirements for review under 28 U.S.C. § 2254(b)(1)(A). But we note that Clardy may have failed to argue cause and prejudice or a fundamental miscarriage of justice in part because no party has raised the issue of whether his Sixth Amendment claim was exhausted before. We also note that the Kansas statute that would now bar Clardy from having his claim heard in state court makes an exception for claims brought after one year when necessary "to prevent a manifest injustice." Kan. Stat. § 60-1507 (2004). There is little case law in Kansas to interpret what this standard means, and we are unable to determine from the briefing before us whether Clardy would satisfy it.

Accordingly, on the assumption that Clardy's Sixth Amendment claim is exhausted, we will review the merits of that claim under the AEDPA. "[F]ederal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits." *Cook v. McKune*, 323 F.3d 825, 829 (10th Cir. 2003). The Kansas Court of Appeals clearly addressed his argument concerning the rape shield law on its merits, rather than dismissing it on a procedural ground. However, as indicated, it did not specifically address the argument as a Sixth Amendment claim; rather, it resolved the issue as a matter of state law.

In such a situation, the question arises whether the state court adjudication of the claim is entitled to deference under the AEDPA. If entitled to such deference, we may only grant a writ of habeas corpus if that state adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding," *id*. § 2254(d)(2). While our circuit has issued somewhat conflicting opinions on whether a state court has in fact considered a claim on its merits, we have recently stated that "we apply [the AEDPA] standard notwithstanding the [state court's] failure to cite or discuss federal case law." *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (per curiam); *see also Cook*, 323 F.3d at 831 ("[T]he Supreme Court said that failure to discuss or even to be aware of federal precedent does not in itself render a state court's decision contrary to federal law.") (citing *Early v. Packer*, 537 U.S. 3 (2002) (per curiam)). *See generally Harris v. Ward*, No. CIV-02-624-F, 2003 WL 22995021, at \*\*15-18 (W.D. Okla. Nov. 12, 2003) (discussing cases); *cf. Ellis v. Mullin*, 326 F.3d 1122, 1130-31 (10th Cir. 2002) (Brorby, J., dissenting). Accordingly, we apply the AEDPA standard to determine whether it was an unreasonable application of the Supreme Court's Sixth Amendment caselaw to

hold that Kansas' rape shield law barred admission of evidence that A.S. had previously been sexually abused.

"Subsidiary factual findings by the state courts are subject to a presumption of correctness, rebuttable only by clear and convincing evidence." *Cook*, 323 F.3d at 831 (citing 28 U.S.C. § 2254(e)(1)). Further "[w]here, as here, the district court has not held an evidentiary hearing, but based its decision solely on review of the state court record, we conduct an independent review of the district court's decision." *Id.*

We conclude that established case law demonstrates that the application of Kansas's rape shield law to the facts of Clardy's case did not implicate his rights under the Sixth Amendment for several reasons.[6] As an initial matter, we note that Kansas's rape shield law has been found to be constitutional, *State v. Blue*, 592 P.2d 897, 901 (Kan. 1979), and the United States Supreme Court has upheld an even more restrictive application of a rape shield statute against Sixth Amendment attack. *Michigan v. Lucas*, 500 U.S. 145, 150 (1991).

Our caselaw generally emphasizes that standards of relevance and materiality must be maintained in the admission of evidence, and application of these standards will not often threaten a defendant's rights under the Sixth

---

[6]Because Clardy's counseled brief made no argument that application of the rape shield law violated due process, *see, e.g.*, Aplt. Br. at i, we conduct no separate analysis of fundamental rights. *Cf. Richmond*, 122 F.3d at 871.

Amendment. *See United States v. Bautista*, 145 F.3d 1140, 1152 (10th Cir. 1998). "'[T]rial judges [, for example,] retain wide latitude insofar as the Confrontation Clause [of the Sixth Amendment] is concerned to impose reasonable limits on . . . cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Byrne*, 171 F.3d 1231, 1234 (10th Cir. 1999) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The application of rape shield laws, in particular, are justified when a state's interest in excluding evidence outweighs a defendant's interests in having the evidence admitted. *Lucas*, 500 U.S. at 150-53. The state has a legitimate interest in preventing the "surprise, harassment, and unnecessary invasions of privacy" that may occur when a rape victim's sexual history is introduced. *Id.* at 150. This is the calculus that the Kansas state legislature performed in enacting the state's rape shield law, and this is the calculus that the trial judge in Clardy's case performed in applying the state statute to the evidentiary decision before him.

Clardy argues, however, that he had a particular need to introduce evidence about the previous sexual abuse A.S. suffered because he wanted to explain how a child could know so much about sex. But this is not a sufficient reason to suggest that application of the rape shield law might have violated his Sixth Amendment rights. We have, for example, found that the application of a rape shield law to

prevent the introduction of a victim's prior sexual history does not violate a defendant's rights, even when his victim is a child.[7]  In *Richmond v. Embry*, 122 F.3d 866 (10th Cir. 1997), for example, we held that it was permissible to exclude evidence that a twelve-year-old victim owned condoms and frequently had a male visitor.  *Id.* at 868-70, 874, 876.  The defendant had attempted to introduce this evidence to show an alternative explanation for why the twelve-year-old would have been sexually active.[8]  *Id.* at 873-74.  A.S. was eleven when she testified

---

[7]Although Clardy mentioned the facts of *United States v. Begay*, 937 F.2d 515 (10th Cir. 1991), which held that a defendant's Sixth Amendment rights were implicated in his attempt to present evidence that a child he had been convicted of raping may have been sexually abused by another person, *id.* at 521-22, we can fundamentally distinguish that case.  The question in *Begay* was whether evidence regarding the source of semen or injury should have been admitted under Federal Rule of Evidence 412(b)(2)(A).  *Begay*, 937 F.2d at 517, 520.  This affected the constitutional analysis because "the Confrontation Clause does not trump established rules of evidence, but rather must yield to such rules when their application is reasonable."  *Quinn v. Haynes*, 234 F.3d 837, 847 (4th Cir. 2000) (citing *Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988)).  The decision in *Begay* found that the application of the rule of evidence had not been reasonable. But, in the Clardy case, Kansas's rape shield law would have permitted physical evidence about the assault to have been admitted because the Kansas rules of evidence mirror the federal rule.  *See* text of Kansas's rape shield law *supra* at n.3; Kan. Stat. Ann. § 21-3525; *accord* Aplt. Br. at 33 n.32.  Clardy also never attempted to present physical evidence in the case.  Finally, even the analysis regarding the rules of evidence in the *Begay* decision would appear to have been cast into doubt by the contrary conclusion of our more recent case, *United States v. Ramone*, 218 F.3d 1229, 1235 (10th Cir. 2000), discussed in the text *infra*.

[8]Because the petitioner in *Richmond* had attempted to introduce the evidence about the twelve-year-old's alleged previous sexual activity through his own witnesses, rather than through cross-examination of the victim, the case was decided under the Fifth and Fourteenth Amendments' right to due process and the

(continued...)

-18-

against Clardy, and Clardy makes no principled argument why the difference of one year from the age of his victim to the age of the victim giving testimony in *Richmond* is relevant. Indeed, the interests of the state in protecting child victims of sexual assault from surprise, harassment, and unnecessary invasions of privacy in cross-examination become stronger as the victim is younger. *Dolinger v. Hall*, 302 F.3d 5, 11 (1st Cir. 2002); *Quinn*, 234 F.3d at 850.

Moreover, Clardy's argument against the Kansas rape shield law parallels the unsuccessful arguments made by defendants against rape shield laws regardless of the age of their victims. Thus, for example, in *United States v. Ramone*, 218 F.3d 1229 (10th Cir. 2000), the defendant argued that he needed to present evidence that his girlfriend enjoyed sex with objects in order to show that she had previous experience with this form of sex and to suggest that his penetration of her with an object was not rape. *Id.* at 1232-33. We held that the exclusion of the girlfriend's previous type of distinct sexual experience, even under the general Federal Rules of Evidence, as opposed to a rape shield law, was not a violation of the defendant's Sixth Amendment rights. *Id.* at 1235. Clardy's argument for including A.S.'s history here is even more weak than the

---

[8](...continued)
Sixth Amendment's right to compulsory process, but the practical effect of the ruling was the same as if the case had been decided under the Sixth Amendment's right to confrontation, as the petitioner had originally argued. *See Richmond*, 122 F.3d at 873-74 (discussing application of Colorado's rape shield law).

defendant's argument in *Ramone* because Clardy sought to introduce previous sexual experience that was neither comparable in scope nor in kind to the type A.S. described as occurring with him. *Accord Dolinger*, 302 F.3d at 7-8 (recognizing no violation of a defendant's Sixth Amendment rights where a state court had determined that a ten-year-old victim's "consensual" homosexual relationship with a younger boy was inadmissible because it bore little similarity to the victim's relationship with his adult male rapist).

Finally, Clardy has already been granted more procedure in the state court system than the United States Supreme Court has found necessary to protect a defendant's Sixth Amendment rights. Because Clardy's pre-trial objection to the application of Kansas's rape shield law was prompt, the trial judge reviewed the evidence that Clardy sought to admit with his arguments in mind, and it gave Clardy a reasoned explanation for its decision why the evidence was not relevant and would be barred by application of the state's rape shield law. Yet the United States Supreme Court has held that rape shield laws may not violate a defendant's Sixth Amendment rights even when the defendant procedurally defaults from having his proffered evidence reviewed by the trial court. *Lucas*, 500 U.S. at 148. Clardy hence received more than adequate procedure under the Constitution; the outcome of the trial court's discretionary ruling on the application of Kansas's rape shield law beyond the point at which constitutional safeguards are satisfied is

a matter for the Kansas courts. *See Estelle*, 502 U.S. at 67-68. We will not conduct an additional review of this evidence on collateral attack. *Id.*; 28 U.S.C. § 2254(a). Further, were we to review this issue de novo, according the state court decision no deference under the AEDPA, we would not grant Clardy's habeas petition.

## CONCLUSION

The judgment of the district court to deny Clardy's petition for a writ of habeas corpus is AFFIRMED. In so concluding, we admonish counsel that the presentation of this case would have been greatly assisted had counsel addressed the many procedural issues involved.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge