IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110165-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 27, 2012) |
| Azlen Adieu Farquoit Marchet, | ) | |
| | ) | 2012 UT App 267 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091901447
The Honorable Vernice Trease

Attorneys:    Herschel Bullen, Salt Lake City, for Appellant
              Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Thorne.

DAVIS, Judge:

¶1      Azlen Adieu Farquoit Marchet appeals his conviction for two counts of aggravated sexual assault, first degree felonies, *see* Utah Code Ann. § 76-5-405 (2003) (current version at *id.* § 76-5-405 (Supp. 2012)).  On appeal, Marchet argues that he received ineffective assistance from his trial counsel, that the trial court erroneously admitted evidence of prior bad acts under rule 404(b) of the Utah Rules of Evidence, and that the trial court erroneously determined that exculpatory out-of-court statements Marchet made in a pretext telephone call were not admissible.  We affirm.

I. Ineffective Assistance of Counsel

¶2      Marchet raises several ineffective assistance of trial counsel arguments on appeal. He argues that his trial counsel was ineffective for failing to object to the majority of Nurse Practitioner Diane Fuller's testimony, for failing to object to the prosecutor's alleged misconduct, and for failing to object more enthusiastically to the mens rea jury instructions.  "[W]hen an ineffective assistance claim is first raised on direct appeal, this court can . . . determine that the defendant was denied effective assistance of counsel [only] if it can do so as a matter of law." *State v. Bair*, 2012 UT App 106, ¶ 12, 275 P.3d 1050 (second alteration and omission in original) (citation and internal quotation marks omitted); *see also Menzies v. Galetka*, 2006 UT 81, ¶ 58, 150 P.3d 480 ("Ineffective assistance of counsel claims are a unique species of claim that are frequently raised for the first time on appeal and are regularly decided based on the record.").  To succeed on an ineffective assistance of counsel claim, "a defendant must first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," which "requires that a defendant rebut the strong presumption that under the circumstances, the challenged action might be considered sound trial strategy." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (internal quotation marks omitted) (citing *Strickland v. Washington,* 466 U.S. 668, 687-89 (1984)).  The second prong of the *Strickland* analysis requires that the defendant demonstrate "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *Id.* (citing *Strickland*, 466 U.S. at 687-88).

¶3      Marchet's first ineffectiveness claim centers on trial counsel's failure to object to Nurse Fuller's ability to testify as a lay witness because her testimony was based on her professional interpretation of Exhibit 17—a sexual assault examination report completed by Nurse Sandra Dunn after examining the complainant, A.H., hours after A.H. was raped—rather than her memory of being present during A.H.'s examination. *See generally* Utah R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . .  This rule does not apply to a witness's expert testimony under Rule 703.").  While it does appear that Nurse Fuller's actual memories from A.H.'s examination were minimal, Marchet's argument overlooks the fact that the trial court allowed Nurse Fuller to testify as an expert witness, not a lay witness.  The State began its direct examination of Nurse Fuller by establishing that she has nearly thirty years of experience as a nurse practitioner with specializations in sexual assault nursing and

forensic nursing. Marchet does not challenge Nurse Fuller's ability to testify as an expert witness or her ability to base that expert testimony on a review of Exhibit 17, which is exactly what Marchet's own expert witness did. *See generally id.* R. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). We are therefore unconvinced that an objection under rule 602 would have been anything but futile, and "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Additionally, trial counsel clarified the basis of Nurse Fuller's testimony on cross-examination by garnering admissions from her explaining that she did not "have an independent recollection of what specific tasks [she] did when [Exhibit 17] was being prepared" by Nurse Dunn and that her testimony was "based upon the report of somebody else, and the photographs taken during" the examination, of which she also lacked an independent recollection.

¶4 Marchet also argues that trial counsel was ineffective for failing to object on foundational grounds to Nurse Fuller's testimony regarding "the incidence of injury during nonconsensual versus consensual sex." Again, instead of objecting, Marchet's trial counsel addressed this issue while cross-examining Nurse Fuller, eliciting several favorable admissions from her that clarified that her statements on this issue were based "purely" on her professional experience and not on any specific study or scientific data, and that she did not believe being injured during sex necessitated the presumption that the sex was not consensual. Addressing this issue on cross-examination was a reasonable trial strategy, especially in light of the fact that Nurse Fuller had already been qualified to testify as an expert witness and that the statements at issue were based on her own experience.[1] *Cf. State v. Clark*, 2004 UT 25, ¶ 7, 89 P.3d

---

[1]Additionally, Marchet contends that trial counsel was ineffective for failing to object to Nurse Fuller's use of Exhibit 17 to refresh her memory, for failing to object to the admission of Exhibit 17, and for affirmatively requesting that the report comprising Exhibit 17 be admitted in full. Marchet further argues that Exhibit 17 amounted to "a 'testimonial document,' requiring for its introduction testimony of the author, or at the least, someone who participated in its preparation who had an actual memory of the event," in accordance with the Confrontation Clause of the Sixth Amendment, *see* U.S. Const. amend. VI. *See generally Salt Lake City v. George*, 2008 UT App 257, ¶¶ 8, 10, 189 P.3d 1284 (explaining that testimonial evidence such as "'ex parte in-court testimony or

(continued...)

162 ("While there may have been grounds to object to [the witnesses'] testimony under Rules 701, 702, or 704 of the Utah Rules of Evidence, defense counsel may well have made a reasonable tactical choice when he did not object." (footnote omitted)).

¶5 Next, Marchet argues that the prosecutor committed misconduct by "foist[ing N]urse Fuller . . . onto the court, jury, and defense counsel, as having prepared [Exhibit

---

[1](...continued)
its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,'" may be admitted "in accordance with the Sixth Amendment . . . only if the declarant is unavailable and if there has been a prior opportunity for cross-examination" (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2008))). Marchet's arguments, however, assume that Exhibit 17 was not independently admissible. *See generally* Utah R. Evid. 803(4) (excepting statements made for medical diagnosis or treatment from the rule against hearsay); *State v. Jaeger*, 1999 UT 1, ¶ 24, 973 P.2d 404 (explaining that medical record evidence that was "not sought to be admitted for the truth of the matter asserted . . . was admissible because it was non-hearsay, not because it fell within [a] hearsay exception" (internal quotation marks omitted)). Marchet also assumes that Exhibit 17 constituted "testimonial evidence" under the Confrontation Clause. *See generally Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2716-17 (2011) (characterizing as "testimonial evidence" under the Confrontation Clause documents that were "made for the purpose of establishing or proving some fact in a criminal proceeding," such as "[a] document created solely for an 'evidentiary purpose, . . . made in aid of a police investigation'" (internal quotation marks omitted)); *George*, 2008 UT App 257, ¶¶ 11-12 (describing "the typical kind of testimonial evidence at which the Confrontation Clause was aimed" as "ex parte examination of witnesses intended to be used against a particular defendant"). Failing to address these threshold issues and instead presenting only a conclusory argument does not satisfy our appellate briefing requirements. *See* Utah R. App. P. 24(a)(9) (requiring that the appellant's brief "contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on"); *State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977 ("[A] reviewing court is not simply a depository in which the appealing party may dump the burden of argument and research."). Therefore, we do not address these arguments.

17] herself" and as "having an independent recollection" of participating in the sexual assault examination of A.H., when "all she was capable of doing was reading the report and drawing inferences based upon 'custom and practice.'" Marchet contends that this misrepresentation by the State amounts to a suppression of exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Marchet admits that this prosecutorial misconduct argument was "not specifically preserved" and argues that we should review it under his ineffectiveness argument and a plain error framework.[2] *See State v. Palmer*, 860 P.2d 339, 342 (Utah Ct. App. 1993) ("Failure to object to the improper remarks [of a prosecutor] . . . waives the claim unless the remarks reach the level of plain error."). To demonstrate plain error, Marchet must show that "an error exists, it should have been obvious to the trial court, and it was harmful." *See id.* "The 'harm' factor in the plain error analysis is equivalent to the prejudice test applied in assessing claims of ineffective assistance of counsel." *Bair*, 2012 UT App 106, ¶ 35 (citation and internal quotation marks omitted). To succeed on this claim of prosecutorial misconduct, Marchet must demonstrate the following: "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the evidence was 'suppressed by the State, either willfully or inadvertently'; and (3) prejudice ensued." *Tillman v. State*, 2005 UT 56, ¶ 28, 128 P.3d 1123 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

¶6     While the State's initial disclosure of Nurse Fuller as one of its expert witnesses appears to have incorrectly described Exhibit 17 as a report she authored, we cannot say that such an error amounted to prosecutorial misconduct, especially where Marchet has not demonstrated how he was prejudiced by this misattribution; indeed, Marchet's trial

---

[2]Specifically, Marchet argues that the alleged prosecutorial misconduct and ineffective assistance from his trial counsel combine to create an "explicitly recognized . . . exceptional circumstance" that warrants reversal. He cites *State v. King*, 2010 UT App 396, 248 P.3d 984, for support. *King*, however, did not create a de facto ground for reversal but determined, based on the facts of that case, that the prosecutor committed errors and that defense counsel's performance was deficient before concluding that the cumulative effect of "the prosecutor's two misstatements, . . . defense counsel's and the court's failures to correct the misstatements, and defense counsel's affirmative acceptance of one of the misstatements" warranted a new trial. *See id.* ¶ 38.

counsel was not only aware of the misattribution several months before trial but also used it to attack Nurse Fuller's credibility on cross-examination.  Additionally, we disagree with Marchet's characterization of Nurse Fuller's testimony on direct examination as misleading; it was clear that she was testifying as an expert and that her statements were based primarily on her expertise.  Thus, the State's actions did not amount to prosecutorial misconduct, and trial counsel's failure to object on prosecutorial misconduct grounds was not ineffective assistance.  *See Kelley*, 2000 UT 41, ¶ 26.

¶7      As his last ineffectiveness argument, Marchet contends that his trial counsel's "tepid objection to the court's refusal to give his [proposed mens rea] jury instructions" amounted to ineffective assistance.  Marchet concludes that instructions 37 and 38 are confusing and contradictory when read together and that this obvious flaw in the instructions amounted to such a glaring error by the trial court that had trial counsel objected with more gusto, the trial court was bound to recognize and correct the error of its ways, specifically by adopting Marchet's previously rejected proposals for the mens rea jury instruction.  We, however, are not convinced that had Marchet's trial counsel objected more enthusiastically, the trial court would have reconsidered and reversed its decision on the jury instructions.[3] *Cf. People v. Weatherspoon*, 927 N.Y.S.2d 217, 220 (N.Y. App. Div. 2011) ("[D]efendant's assertion that counsel should have more vigorously supported his preindictment delay motion cannot serve as a basis for a claim of ineffective assistance, as ineffective assistance does not result from counsel's failure to make [or more enthusiastically support] a motion or argument that has little or no chance of success." (second alteration in original) (citation and internal quotation marks omitted)).  This sort of conclusory assertion is hardly sufficient to convince us that the

---

[3]Marchet merely quotes the text of instructions 37 and 38 and concludes that the trial court erred by giving those instructions.  However, he seeks reversal not for the trial court's alleged error, but for his trial counsel's failure to object with more exuberance in light of this apparently obvious error.  To the extent Marchet directly challenges the trial court's decision regarding the jury instructions for the first time in his reply brief, we decline to address it.  *See generally Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (citation and internal quotation marks omitted)).

jury instructions were actually flawed and that the alleged flaw would have been readily corrected but for trial counsel's apparently lukewarm objection.

## II. Rule 404(b) Evidence

¶8    Marchet next argues that the trial court erroneously admitted evidence of other bad acts under rule 404(b) of the Utah Rules of Evidence. *See generally* Utah R. Evid. 404(b)(2) (permitting evidence of a prior bad act to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Specifically, Marchet contends that testimony from one rule 404(b) witness, P.C., was unwarranted because it was not similar enough to A.H.'s testimony and the testimony of the other rule 404(b) witness, S.W., to support the permitted noncharacter purpose of demonstrating Marchet's intent, lack of consent, or modus operandi.

¶9    "[W]e review a trial court's decision to admit evidence under rule 404(b) . . . under an abuse of discretion standard[, and w]e review the record to determine whether the admission of other bad acts evidence was scrupulously examined by the trial judge in the proper exercise of that discretion." *State v. Mead*, 2001 UT 58, ¶ 61, 27 P.3d 1115 (first alteration and omission in original) (citation and internal quotation marks omitted). Here, the trial court "scrupulously examined" P.C.'s proposed testimony and walked through the three-step process for determining the admissibility of the evidence under rule 404(b). *See generally State v. Marchet* (*Marchet I*), 2009 UT App 262, ¶ 29, 219 P.3d 75 ("First, 'the trial court must . . . determine whether the bad acts evidence is being offered for a proper, noncharacter purpose, such as one of those specifically listed in rule 404(b).' . . . If the purpose is deemed proper, 'the court must [next] determine whether the bad acts evidence meets the requirements of rule 402 [of the Utah Rules of Evidence], which permits admission of only relevant evidence.' Last, the court must analyze the evidence in light of rule 403 [of the Utah Rules of Evidence] to assess whether its probative value is substantially outweighed by the risk of unfair prejudice to the defendant." (first alteration and first omission in original) (citations omitted) (quoting *State v. Nelson-Waggoner*, 2000 UT 59, ¶¶ 18-20, 6 P.3d 1120)). The trial court focused on the similarities among the three women's testimony, noting that, like the other witnesses, P.C. testified that Marchet sought her out while she was at a nightclub with a friend; that he gave her a false name; that he lured her away from her friend and into a secluded area (a hotel stairwell in P.C.'s case ) under a false pretense; that once in the secluded area, he physically overpowered her, "flipping" her around so

that her back faced his chest; that once she was turned around and held against him, Marchet moved her clothing out of the way and she heard his pants zipper; and that she told him, "No" and indicated that she was not consenting. It was at that point, as P.C. testified, that she "thought he was going to rape [her]," prompting her to yell, scream, and fight to get away from him until he ultimately let her go. Like the other women, P.C. also testified that Marchet called her shortly after the incident, acting as if everything was fine, and in P.C.'s case saying that he "wanted to check on [her] because [she] ran out of [the hotel stairwell] pretty quick and [she] seemed upset."

¶10    Marchet contends that regardless of those similarities, P.C.'s testimony is inadmissible primarily because, unlike A.H. and S.W., P.C. experienced "a lesser sexual advance . . . not amounting to aggravated sexual assault, rape or sodomy." We are hardly convinced that P.C.'s fortune of not having been raped or sodomized necessarily renders her testimony so different from the other witnesses as to remove her experience from the realm of admissible evidence under rule 404(b); P.C.'s testimony still remains indicative of intent, lack of consent, or modus operandi under rule 404(b). Marchet's claim that S.W.'s testimony was more probative under rule 404(b) and that P.C.'s testimony was therefore unnecessary, and the additional differences Marchet points out—the span of one-and-a-half years between P.C.'s allegations and the crime charged and the fact that P.C. described Marchet as having fondled her breasts where the other women did not allege such—are also unavailing here. Accordingly, the trial court did not abuse its discretion in admitting her testimony.

## III. The Pretext Call

¶11    Last, Marchet argues that the trial court's refusal to admit his out-of-court exculpatory statements was in error. Specifically, Marchet contends that because he was unaware that the telephone call between him and A.H. days after the charged events was a scripted, recorded pretext call set up by the detective working on A.H.'s case (Detective), Marchet's statements during the call demonstrate his belief that A.H. had consented, which is the main theory of Marchet's defense.[4] Marchet believes this

---

[4]The telephone call took place on June 11, 2003, and the aggravated sexual assault occurred early in the morning of June 8, 2003.

evidence is admissible under rule 803(3) of the Utah Rules of Evidence,[5] which describes the present-sense exception to the rule against hearsay as

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Utah R. Evid. 803(3).

> Hearsay evidence that shows a defendant's mental state prior to the commission of a crime is admissible under evidence rule 803(3) if (i) the statement was made under circumstances that indicate its reliability and (ii) it is relevant to show intent, plan, motive, design, malice, or ill will when

---

[5]Marchet also argues that the transcript of the pretext call is admissible under rule 106 of the Utah Rules of Evidence. *See generally* Utah R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). Because Marchet has failed to preserve this issue, which was not raised until his motion for a new trial was filed, *after* filing his notice of appeal, we do not address it. *See generally* Utah R. App. P. 4(b)(2) ("A notice of appeal filed after announcement or entry of judgment, but before entry of an order disposing of any motion listed in Rule 4(b)[, including a motion for a new trial,] shall be treated as filed after entry of the order and on the day thereof, except that such a notice of appeal is effective to appeal only from the underlying judgment. To appeal from a final order disposing of any motion listed in Rule 4(b), a party must file a notice of appeal or an amended notice of appeal within the prescribed time measured from the entry of the order."). Additionally, Marchet asserts that the trial court's "[r]efusal to allow [him] to admit or utilize the [transcript of the pretext call] in cross-examination [of A.H. and Detective] was a denial of the Right of Confrontation under the Sixth Amendment which resulted in serious prejudice." Because of the manner in which we rule on this issue, we need not address this claim.

the defendant's state of mind is an issue in the case or (iii) it is relevant to prove or explain acts or conduct of the defendant.

*State v. Dibello*, 780 P.2d 1221, 1228 (Utah 1989). Here, the trial court ruled that "the pretext call and what was stated during the call are not relevant and/or hearsay and are not appropriate to be admitted" except to the limited extent necessary to explain testimony by A.H. and Detective that alluded to the pretext call. We agree with the trial court.

¶12 Marchet's statements, made several days after the charged events occurred, do not amount to evidence of his state of mind as it existed during the encounter with A.H. *Compare Shepard v. United States*, 290 U.S. 96, 105-06 (1933) ("Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored. The testimony now questioned faced backward and not forward. . . . What is even more important, it spoke to a past act, and more than that, to an act by some one not the speaker."), *and State v. Jaeger*, 1999 UT 1, ¶ 25, 973 P.2d 404 (explaining that rule 803(3) did not apply to the victim's prior statements "concerning her alleged suicide attempt" because those statements merely indicated that "she had attempted suicide in the *past*, not that she was then attempting or considering suicide"), *with Dibello*, 780 P.2d at 1228-29 (affirming the trial court's admission under rule 803(3) of a statement made by the defendant two days *before* he and his wife separated and seven days *before* his wife's murder, in which he had indicated that if his wife ever left him, he would kill her). Marchet has not presented any contrary arguments; rather, he rests his assertions regarding the pretext call on the assumption that the evidence was admissible under rule 803(3). Because we determine that the evidence was not admissible under rule 803(3), we affirm the trial court's ruling excluding this evidence.

¶13 In conclusion, Marchet's trial counsel did not perform deficiently in his handling of Nurse Fuller's testimony, Exhibit 17, the prosecutor's conduct, and the mens rea jury instructions. The trial court was correct in permitting P.C. to testify under rule 404(b) and in excluding the pretext call evidence. Accordingly, we affirm.[6]

---

[6]We decline Marchet's invitation to revisit our earlier decision in *Marchet I*, 2009

(continued...)

_____
James Z. Davis, Judge

-----

¶14    WE CONCUR:



_____
Gregory K. Orme, Judge



_____
William A. Thorne Jr., Judge

---

[6](...continued)
UT App 262, 219 P.3d 75, *cert. denied*, 221 P.3d 837 (Utah 2009), as we also declined to do so in *State v. Marchet* (*Marchet II*), 2012 UT App 197, ¶ 10 n.4, *petition for cert. filed*, August 17, 2012 (No. 20120696).  *See generally State v. Tenorio*, 2007 UT App 92, ¶ 9, 156 P.3d 854 ("[A] court will overrule its own precedent in the limited circumstances where it is clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent . . . ." (citation and internal quotation marks omitted)).  Additionally, because we have determined that no errors occurred, we reject Marchet's cumulative error argument.