2014 UT App 147

**STATE of Utah, Plaintiff and Appellee,**

v.

**Azlen Adieu Farquat MARCHET, Defendant and Appellant.**

**No. 20100777–CA.**

Court of Appeals of Utah.

June 26, 2014.

See also 219 P.3d 75, 284 P.3d 668, 287 P.3d 490.

David M. Corbett, Craig L. Pankratz, and Steve S. Christensen, for Appellant.

Sean D. Reyes and Mark C. Field, for Appellee.

Judge JOHN A. PEARCE authored this Opinion, in which Judge STEPHEN L. ROTH and Senior Judge PAMELA T. GREENWOOD concurred.[1]

Opinion

PEARCE, Judge:

¶ 1 Azlen Adieu Farquat Marchet appeals from his conviction of rape, a first degree felony.[2] We affirm.

## BACKGROUND [3]

¶ 2 Marchet's conviction results from his 2003 rape of S.W., a woman he knew casually through her place of employment. On October 16, 2003, S.W. visited a Salt Lake City dance club. By apparent coincidence, Marchet was also at the club that evening. Marchet approached her. She recognized and hugged him. Marchet asked her if she want-ed to see a new luxury SUV he had parked outside. She did, and the two walked out the front door of the club together.

¶ 3 Marchet guided S.W. to an unlit parking area, but S.W. stopped when she did not see the vehicle that Marchet had described. At that point, Marchet—who was much larger than S.W.—nudged S.W. between two parked cars and began to kiss her. She struggled and managed to temporarily break away, but Marchet grabbed her arm and pulled her back. He then placed her hand on his exposed penis. She told him, "That's not what I came out here for."

¶ 4 Despite her protests, Marchet grabbed S.W. by the waist and flipped her around so that she was facing away from him. Marchet pinned S.W.'s arms against her midsection with one arm and pulled her pants down. S.W. continued to struggle and protest as Marchet attempted to penetrate her anally. When that attempt failed, Marchet penetrated her vaginally. Marchet eventually released S.W. She then pulled up her pants and ran back toward the club. He chased after her, caught up, and asked, "[Y]ou're not going to pull a Kobe Bryant on me, are you?" [4] She ran back into the club distraught and crying. She immediately told club employees that she had been raped.

¶ 5 A Salt Lake City Police Department officer, Officer Miller, was at the club performing a bar check. Club employees notified Miller of S.W.'s rape allegations. Miller met with S.W. for about forty-five minutes. During their discussion, S.W. was upset, shaking, and crying. S.W. told Miller that Marchet had just sexually assaulted her. That same night, a forensic nurse, Nurse Thompson, examined S.W. During the exami-

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. This court has, on three prior occasions, considered Marchet's appeals from other felony sex crime convictions. *See State v. Marchet (Marchet I)*, 2009 UT App 262, 219 P.3d 75 (one count of rape); *State v. Marchet (Marchet II)*, 2012 UT App 197, 284 P.3d 668 (one count of rape); *State v. Marchet (Marchet III)*, 2012 UT App 267, 287 P.3d 490 (two counts of aggravated sexual assault).

3. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

4. At trial, S.W. was asked how she interpreted this comment. She explained, "There was a very public trial in the summer of 2003 of [professional athlete] Kobe Bryant being accused of rape."

nation, Thompson documented no readily apparent physical injuries. She did, however, observe redness around S.W.'s vaginal opening that she interpreted as an injury consistent with nonconsensual sex.

¶ 6 The State charged Marchet with one count of rape. Prior to trial, the State moved for the admission of evidence of sexual assaults that Marchet had committed against two other women, A.H. and P.C.[5] The State argued that the testimony of the two women would be offered for the noncharacter purposes of proving intent, a common scheme or plan, absence of mistake or accident, and lack of S.W.'s consent. After examining the similarities between the other sexual assaults and the charged rape of S.W. to determine relevance and potential for unfair prejudice, the district court granted the State's motion and allowed the testimony.[6]

¶ 7 At trial, S.W. recounted her version of events as described above. Officer Miller testified about the interview she had conducted with S.W. shortly after the assault, including S.W.'s "hysterical" demeanor and apparent lack of intoxication.[7] Club employees also testified that S.W. was crying and upset upon returning from the parking lot.

¶ 8 A.H. testified that she had met Marchet at a night club in June 2003. About a month after first meeting him, A.H. again encountered Marchet at a club. After the club closed, Marchet asked A.H. to talk with him outside. A.H. accompanied him toward what she thought was his car. Marchet then grabbed A.H.'s waist and pulled her into an unlit alley, where he turned her around and restrained her. Despite her vocal protests, Marchet then penetrated her anally and vaginally. Immediately afterwards, A.H. confronted Marchet, who responded that they "both just probably needed to have a little—a little fun, just blow off a little steam."

¶ 9 P.C. testified that she met Marchet at a hotel dance club in January 2005. Around closing time, Marchet accompanied P.C. to the hotel lobby, and eventually led her into a stairwell. He began to kiss her, but she protested, at which point he pulled her to the stair landing, grabbed her, and spun her around so her back was toward him. As she continued to protest, Marchet restrained her arms and pulled her skirt down to her thighs. P.C. heard the sound of a zipper and believed that Marchet was about to rape her. She struggled free, but Marchet again grabbed her, pulled up her shirt, and began kissing her breasts. Marchet released her after she began yelling. Marchet called her on the phone about a half hour later and told her, "I just wanted to check on you because you ran out of here pretty quick and you seemed upset."

¶ 10 Thompson, the forensic nurse who had examined S.W., testified about the exam, the redness she observed, and her opinion that the redness was an injury consistent with nonconsensual sex. On cross-examination, Thompson conceded that the redness was not something that most people would consider an injury and that she had observed the redness with an instrument that provided 15x magnification. She also opined that some form of injury will occur in 70 to 80% of nonconsensual penetration cases, while consensual penetration results in injury approximately 10% of the time.

¶ 11 During his cross-examination of Thompson, Marchet's counsel sought to introduce her forensic examination report into evidence.[8] The State objected, arguing that

5. The State's motion also sought the admission of similar testimony from a third woman, but the district court ultimately decided to exclude that evidence "based in large part on the balancing requirements of [rule] 403." *See generally* Utah R. Evid 403 (allowing for the exclusion of relevant evidence where probative value is substantially outweighed by potential for, among other things, unfair prejudice).

6. The district court ultimately instructed the jury that it could consider A.H. and P.C.'s testimony "only for the purpose of deciding (1) whether or not the defendant intended to rape [S.W.]; (2) whether or not he had a plan, scheme, or other modus operandi with regard to [S.W.]; or (3) whether or not [S.W.] consented to the sexual intercourse."

7. S.W. testified at trial that she had consumed two cocktails and was on various prescription medications at the time of the assault but that she was not intoxicated.

8. We note that Marchet is represented by different counsel on appeal.

the report contained information that S.W. had engaged in sexual intercourse with another man within seventy-two hours before the incident with Marchet.[9] The State argued that this information was irrelevant and should be redacted from the report pursuant to rule 412 of the Utah Rules of Evidence, which generally prohibits "evidence offered to prove that a victim engaged in other sexual behavior." Utah R. Evid. 412(a)(1).

¶ 12 Marchet's counsel argued that the evidence was admissible to demonstrate that someone other than Marchet could have caused S.W.'s injury. *See id.* R. 412(b)(1). When the district court pointed out that rule 412 generally requires pretrial notice when evidence of a victim's sexual activity will be offered to show an alternate source of injury, Marchet's counsel candidly admitted that he had not discovered the information about S.W.'s prior sexual encounter during his preparations for trial. The district court ruled that the information would be redacted.

¶ 13 Despite the district court's ruling, Marchet's counsel filed a written motion to admit the prior sexual activity evidence under rule 412(b) for the purpose of providing an alternate explanation for S.W.'s injury. Marchet's counsel again took full responsibility for failing to discover the evidence in time to seek its admission before trial, stating, "[I]t is my problem. I didn't see that. Absolutely." The State objected to the motion, arguing that Marchet had proffered no evidence to prove that the prior consensual sexual encounter could have caused the injury. The district court expressed concern that if it failed to conduct a rule 412 hearing, Marchet might later claim ineffective assistance of counsel. Nevertheless, the court informed Marchet's counsel that unless he could present expert testimony tying the prior sex act to S.W.'s injury, the evidence would not be relevant.

¶ 14 Counsel for the State reminded Marchet's counsel that Marchet's prior attorney had designated a defense expert, Nurse Carver. Marchet's counsel explained that he had not spoken with an expert because he knew that S.W. had not suffered any acute injuries and he did not want to emphasize the minimal redness observed by Thompson. The district court took a recess to allow counsel to speak with Carver. When he returned, counsel stated that he would no longer seek to introduce the rule 412(b) evidence, as Carver would testify that the redness Thompson had observed was not an injury, obviating the need for evidence of an alternative source of the redness. The district court then indicated on the record that Marchet's counsel had made a strategic decision not to pursue admission of the rule 412(b) evidence.

¶ 15 Marchet testified in his own defense. He acknowledged having had sex with S.W. outside of the club on the night in question but insisted that it was consensual. He admitted saying "don't go pull a Kobe on me" after the encounter, but he explained that he did so only because S.W. had "freaked out." Carver also testified for the defense and opined that the redness that Thompson had observed was not significant and did not indicate nonconsensual sex. She also testified that if the encounter happened as S.W. had described, then Carver "would have expected to see injuries."

¶ 16 The jury convicted Marchet of rape, and the district court sentenced him to a prison term of five years to life, to be served consecutively to any other prison terms that Marchet was then serving. Marchet filed a motion for new trial alleging that his counsel provided ineffective assistance by mishandling the rule 412 evidence and that the jury had used A.H. and P.C.'s testimony for the improper purpose of evaluating Marchet's character. The district court denied Marchet's motion, and he now appeals his conviction.

## ISSUES AND STANDARDS OF REVIEW

¶ 17 Marchet raises two issues on appeal. First, he argues that his trial counsel was ineffective because counsel failed to secure the admission of the rule 412(b) evi-

---

9. In his appellate briefs, Marchet refers to the prior sex act as occurring approximately forty-eight hours prior to his encounter with S.W. The record is unclear as to the exact time difference between the two events.

dence that would have provided an alternate explanation for S.W.'s injury. When the district court has already addressed a claim of ineffective assistance of counsel in resolving a motion for new trial, we review the court's legal conclusions for correctness and its factual findings for clear error. *State v. Templin,* 805 P.2d 182, 186 (Utah 1990). Second, Marchet argues that the district court erred in admitting testimony that he had sexually assaulted P.C. and A.H. as evidence of prior bad acts under rule 404(b) of the Utah Rules of Evidence. "A trial court's admission of other acts evidence is reviewed for abuse of discretion, but the evidence 'must be scrupulously examined by trial judges in the proper exercise of that discretion.'" *State v. Verde,* 2012 UT 60, ¶ 13, 296 P.3d 673 (quoting *State v. Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837).

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶ 18 Marchet argues that his trial counsel mishandled Nurse Thompson's forensic examination report and thereby rendered ineffective assistance of counsel. Marchet identifies two specific instances that he alleges constituted deficient performance by his counsel. First, Marchet challenges counsel's failure to investigate the report and discover the information pertaining to S.W.'s prior sexual activity in time to file a timely pretrial motion under rule 412. *See* Utah R. Evid. 412(c). Second, Marchet faults counsel's decision at trial to forego the possible admission of the information under rule 412(b) and instead rely solely on the defense expert's testimony that S.W.'s redness did not constitute an injury.

¶ 19 To prevail on an ineffective assistance of counsel claim under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Nelson–Waggoner,* 2004 UT 29, ¶ 27, 94 P.3d 186 (citation and internal quotation marks omitted). Counsel's performance will be deemed deficient only "if 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Eyre,* 2008 UT 16, ¶ 16, 179 P.3d 792 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). The test for determining deficient performance is "whether counsel's representation fell below an objective standard of reasonableness." *Id.* (citation and internal quotation marks omitted).

¶ 20 Defense counsel's pretrial preparation in this case raises a serious concern that he performed deficiently by failing to notice the prior sexual activity evidence in the forensic report prior to trial. *See State v. Templin,* 805 P.2d 182, 188 (Utah 1990) ("If counsel does not adequately investigate the underlying facts of a case, ... counsel's performance cannot fall within the 'wide range of reasonable professional assistance.'" (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052)). Counsel admitted at trial that he "made a mistake" and "didn't see it" during his trial preparations. He explained that the form Thompson used was outdated and that the newer version did not ask about prior sexual activity. Thus, because he was used to looking at the newer form, he was not "necessarily looking for" information about S.W.'s prior sexual activity when reviewing the report. Counsel repeatedly emphasized to the district court, "[I]t's completely my fault. It's no one else's fault. No one other than myself is responsible for that."

¶ 21 Marchet argues that his trial counsel's ultimate decision not to seek to admit the rule 412(b) evidence "was not a well-reasoned tactical decision," but rather "was an easy way out of the problem he created" by failing to adequately investigate the contents of the report before trial. We need not reach the merits of this argument, however, as *Strickland* instructs that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." 466 U.S. at 670, 104 S.Ct. 2052.

¶ 22 Marchet is entitled to relief on his ineffective assistance of counsel claim only if he can show " 'that there is a reason-

able probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Eyre*, 2008 UT 16, ¶ 17, 179 P.3d 792 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). "This reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation and internal quotation marks omitted). In evaluating prejudice, we "consider the totality of the evidence" to determine whether counsel's errors affected the "entire evidentiary picture" against a defendant. *See State v. Lenkart*, 2011 UT 27, ¶ 38, 262 P.3d 1 (citation and internal quotation marks omitted).

¶ 23 Marchet argues that counsel's actions prejudiced him because rule 412(b) evidence "plays a huge role in cases involving alleged sexual misconduct" and that "given its inherent significance, the deleterious effect of trial counsel's failure to present such evidence to a jury, when available, is substantial." Marchet points us to the Tenth Circuit Court of Appeals decision in *United States v. Begay*, 937 F.2d 515 (10th Cir.1991), which determined that a trial court's exclusion of prior sexual activity evidence violated rights guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See id.* at 523; *see also* Utah R. Evid. 412 advisory committee note ("Where the prosecution has directly or indirectly asserted that the physical evidence originated with the accused, the defendant must be afforded an opportunity to prove that another person was responsible." (citing *Begay*, 937 F.2d at 523 & n. 10)). Marchet argues that, in light of its constitutional significance, counsel's "failure to present the available [rule 412(b)] evidence in this case prejudiced Marchet." [10]

¶ 24 We see no reasonable probability of a more favorable verdict for Marchet in this case if his counsel had handled the forensic examination report differently. Had counsel done so, the only potential change to the overall evidentiary picture *might* have been the admission of the prior sex act evidence for the purpose of showing an alternate source of S.W.'s injury. However, S.W.'s injury was a relatively minor aspect of the State's case. Thompson testified that she would have concluded that S.W. had been raped even if there was no injury, based on S.W.'s anxious and tearful behavior during the examination. Thompson's testimony also established that she had observed the redness under magnification and that the average person would not consider it to be an injury. Thompson further conceded that the redness could have resulted from consensual sex, although she testified that "the probability that injury is caused by nonconsensual is much higher than it would be that it was caused by consensual."

¶ 25 Other evidence also substantiated S.W.'s sworn version of events. Marchet himself acknowledged that he had sexual intercourse with S.W. in the parking lot that evening, and he further admitted to making the statement to S.W. referencing the Kobe Bryant rape allegation. The jury also heard multiple witnesses testify that S.W. was upset and crying after the encounter with Marchet and that she immediately reported having been sexually assaulted. These witnesses included Officer Miller, who interviewed S.W. shortly after the assault, and Thompson, who conducted her forensic examination of S.W. later that same night.

¶ 26 In light of this substantial evidence, admission of the rule 412(b) evidence to provide a possible alternate explanation for the disputed injury to S.W. would not have altered the "entire evidentiary picture" against

10. We note that the Sixth Amendment right to confrontation "requires only that the accused permitted to introduce all relevant and admissible evidence." *State v. Williams*, 773 P.2d 1368, 1372 (Utah 1989). Contrary to Marchet's suggestion, rule 412(b) evidence, even when introduced to suggest an alternative source of a victim's injury, is not automatically admissible. *See State v. Boyd*, 2001 UT 30, ¶ 39, 25 P.3d 985 ("Evidence that fits the exception 'may still be excluded if it does not satisfy requirements of the other evidence rules, including Rule 403.'" (quoting Utah R. Evid. 412 advisory committee note)). It is by no means certain that Marchet would have ultimately been able to secure the admission of the prior sexual activity evidence in this case. However, in light of our conclusion that there is no reasonable likelihood that admission of the evidence would have led to a more favorable result for Marchet, we do not address questions pertaining to admissibility.

Marchet, *see Lenkart,* 2011 UT 27, ¶ 38, 262 P.3d 1, and its absence does not undermine our confidence in the ultimate verdict, *see State v. Eyre,* 2008 UT 16, ¶ 17, 179 P.3d 792. Accordingly, Marchet has failed to demonstrate prejudice arising from any alleged deficiency in his trial counsel's performance below, and we therefore reject his ineffective assistance of counsel claim.

## II. The Rule 404(b) Evidence

¶ 27 Marchet also argues that the district court erred in admitting the testimony of A.H. and P.C. under rule 404(b) of the Utah Rules of Evidence.[11] Traditionally, the admission of prior bad acts evidence under rule 404(b) has been a three-step process requiring trial court determinations that (1) the evidence is being offered for a proper, noncharacter purpose, (2) the evidence is relevant, and (3) the probative value of the evidence is not substantially outweighed by its prejudicial effect. *See State v. Labrum,* 2014 UT App 5, ¶ 19, 318 P.3d 1151. In *Labrum,* we noted that the Utah Supreme Court appears to have collapsed the traditional three-step test into two steps in *State v. Verde,* 2012 UT 60, 296 P.3d 673, wherein the supreme court "considered the relevance of the other acts evidence as integral to an analysis of the first and third parts of the traditional test and did not address it as a separate step of the analytical framework." *Labrum,* 2014 UT App 5, ¶ 19, 318 P.3d 1151; *see also Verde,* 2012 UT 60, ¶¶ 14–18, 26, 40, 57, 296 P.3d 673. However, because Marchet briefs his argument under the three-step analysis, we proceed under that framework.[12]

¶ 28 Marchet concedes that the district court "undertook an examination, as is required by *Ferguson,*" prior to admitting the testimony of A.H. and P.C. *See State v. Ferguson,* 2011 UT App 77, ¶ 13, 250 P.3d 89 (stating the traditional three-step analysis for admission of evidence under rule 404(b)). Marchet nevertheless attacks the district court's decision in three ways.

¶ 29 First, Marchet raises a series of general assertions of error, unsupported by authority or analysis as to how that authority applies to this case.[13] The district court's traditional rule 404(b) analysis, as reflected in the transcript from the hearing below, is sufficient to withstand these general allegations. The district court determined that the evidence was offered for proper noncharacter purposes: to show intent, common plan or scheme, absence of mistake or accident, and

11. As noted above, this is the fourth occasion upon which we review an appeal by Marchet from a sex crime conviction. All three of Marchet's prior cases before this court involved analysis of evidence admitted under rule 404(b), and two of the three involved the admission of testimony that Marchet had sexually assaulted other women. *See Marchet I,* 2009 UT App 262, ¶¶ 28–51, 219 P.3d 75 (affirming admission of two other rape allegations); *Marchet II,* 2012 UT App 197, ¶¶ 11–14, 284 P.3d 668 (affirming admission of evidence of physical assault against a witness); *Marchet III,* 2012 UT App 267, ¶¶ 8–10, 287 P.3d 490 (affirming admission of two other allegations of sexual assault). Further, *Marchet III* affirmed Marchet's conviction of sexually assaulting A.H., who testified in this case. The two prior bad act witnesses in *Marchet III* were P.C., who testified in this case, and S.W., the victim in this case.

12. *State v. Verde* also clarified the analysis for the admission of prior bad acts evidence. Specifically, *Verde* examined the use of prior bad acts evidence to prove a defendant's specific intent, 2012 UT 60, ¶¶ 21–32, 296 P.3d 673, and to show a common plan or scheme, *id.* ¶¶ 33–43. It also acknowledged the "theoretical possibility" that prior bad act evidence could be admissible under the "so-called 'doctrine of chances'" to bolster victim credibility against a defense of fabrication. *Id.* ¶¶ 46–47. Even though *Verde* was issued several months prior to submission of the briefing in this case, Marchet did not brief any argument that the analytical framework *Verde* employed applies to his case. We therefore address his rule 404(b) argument solely under the authorities he relies upon in his briefing on appeal. *Cf.* Utah R.App. P. 24(a)(9) (requiring the argument section of an appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented," supported by citations to applicable authority).

13. Marchet's perfunctory briefing on this issue may be explained by his acknowledgment that there is significant overlap between the issues in this case and the issues we resolved in *Marchet III.* In *Marchet III,* we addressed the prior bad acts testimony of S.W. and P.C. at Marchet's trial for sexually assaulting A.H. *See* 2012 UT App 267, ¶¶ 8–10, 287 P.3d 490. In light of the degree to which the issues in the two cases are intertwined, Marchet admits that he raised his rule 404(b) argument in this case "to further a change in law and to preserve the issue for future proceedings that may occur."

lack of consent by S.W. *See* Utah R. Evid. 404(b)(2) (identifying "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as proper noncharacter purposes); *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 24, 6 P.3d 1120 ("More recently, however, bad acts evidence has been admitted for the noncharacter purpose of proving the element of lack of consent in certain rape trials."). The district court further conducted an examination of the similarities between the events described by A.H., P.C., and S.W. and found that the similarities identified by the State rendered the bad acts evidence relevant to the purposes for which it was offered. Finally, the district court examined the factors enumerated in *State v. Shickles*, 760 P.2d 291 (Utah 1988), and determined that the probative value of the bad acts evidence was not substantially outweighed by its potential for unfair prejudice. *See id.* at 295–96 (identifying six factors to be considered in weighing the relevance of bad acts evidence against the potential for prejudice). *But see State v. Lucero*, 2014 UT 15, ¶ 32 (stating that the *Shickles* factors may be helpful in some cases but are not the exclusive test for determining admissibility under rule 403 of the Utah Rules of Evidence). Thus, the district court undertook each of the three steps necessary to admit A.H. and P.C.'s testimony, and no deficiency in the court's reasoning is apparent on the face of the record.

¶ 30 Marchet next argues that A.H.'s testimony fails to show a modus operandi and should not have been admitted for that purpose. He argues that A.H.'s testimony is analogous to the testimony we rejected in *State v. Cox*, 787 P.2d 4 (Utah Ct.App.1990). There, this court concluded that testimony of a prior sexual assault did not show "a common design or modus operandi" by a rape defendant because the similarities between the two events were "common to many assault or rape cases and are not peculiarly distinctive of defendant's conduct." *Id.* at 6.

¶ 31 Marchet fails to explain, however, how any error in admitting the evidence for that purpose prejudiced him in light of the other purposes for which the evidence was admitted—to show intent, common plan or scheme, and S.W.'s lack of consent. Because Marchet fails to demonstrate prejudice resulting from the admission of A.H.'s testimony to show modus operandi, we will not disturb his conviction even if admission for that purpose could be deemed error. *See Marchet II*, 2012 UT App 197, ¶ 12, 284 P.3d 668 ("[We] will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably [a]ffect the likelihood of a different verdict." (alterations in original) (citation and internal quotation marks omitted)).

¶ 32 Marchet finally argues that P.C.'s testimony should have been excluded due to a lack of similarity between Marchet's assault on her and his rape of S.W. *See generally Shickles*, 760 P.2d at 295 (identifying "the similarities between the crimes" as a factor in evaluating the admissibility of prior bad acts evidence). This court previously rejected this very argument—about the same testimony by the same witness—in affirming Marchet's conviction for sexually assaulting A.H. in *Marchet III*. Therein, we stated that "[w]e are hardly convinced that P.C.'s fortune of not having been raped or sodomized necessarily renders her testimony so different from the other witnesses as to remove her experience from the realm of admissible evidence under rule 404(b)." *Marchet III*, 2012 UT App 267, ¶ 10, 287 P.3d 490. In light of our prior decision affirming the admission of P.C.'s testimony in very similar circumstances, and Marchet's failure to identify any new and meritorious reason why her testimony should have been excluded in this case, we conclude that the district court's admission of that testimony represents a valid exercise of the court's discretion.

## CONCLUSION

¶ 33 We conclude that trial counsel's handling of the rule 412(b) evidence did not prejudice Marchet because, in light of the other evidence of Marchet's guilt, a more favorable verdict would not have been reasonably likely even if counsel had successfully introduced the rule 412(b) evidence. Thus, Marchet has not established his claim of ineffective assistance of counsel. We also conclude that Marchet has failed to establish

any reversible error resulting from the district court's admission of A.H. and P.C.'s testimony under rule 404(b) of the Utah Rules of Evidence. Accordingly, we affirm Marchet's conviction.